James W. HUTCHERSON; and Sharon A. Hutcherson, Appellants,

v.

Glen HICKS, M.D., Appellee.

No. 2009–CA–000370–MR.

Court of Appeals of Kentucky.

May 14, 2010.

Jeffrey T. Sampson, Louisville, KY, for Appellants.

Andrew N. Clooney, Louisville, KY, for Appellee.

Before VANMETER, Acting Chief Judge; STUMBO and TAYLOR, Judges.

## OPINION

TAYLOR, Judge.

James and Sharon Hutcherson bring this appeal from a February 16, 2009, judgment of the Jefferson Circuit Court dismissing the Hutchersons' medical malpractice action against Dr. Glen Hicks upon a jury verdict in his favor. We reverse and remand.

On May 18, 2000, the Hutchersons filed a complaint against, *inter alios*, Dr. Hicks and Cypress Medical Associates, P.S.C., alleging medical malpractice. At the time of the alleged malpractice, Dr. Hicks was employed by Cypress Medical. Although duly served with summons and a copy of the complaint, Dr. Hicks failed to file a responsive pleading, enter an appearance, or in any way respond thereto.

Almost three years later, on March 14, 2003, the Hutchersons filed a motion for default judgment pursuant to Kentucky Rules of Civil Procedure (CR) 55.01. By default judgment entered March 27, 2003, the circuit court granted a default judgment against Dr. Hicks as to liability only. A hearing was thereafter scheduled on June 24, 2003, to assess the amount of damages. A copy of the notice of hearing was sent to Dr. Hicks at his last known address, which was also his work address.[1] Dr. Hicks failed to appear at the hearing to determine damages. By judgment entered July 17, 2003, the circuit court awarded the Hutchersons $211,953.39 in damages against Dr. Hicks. No appeal was taken from this judgment.

Some four years after the filing of the complaint and over a year and a half after entry of the default judgment, Dr. Hicks filed a motion to set aside the default judgment and the judgment for damages on November 10, 2004. Dr. Hicks admitted receiving proper and timely notice of the malpractice action by service of the summons and complaint on May 19, 2000. In a deposition, Dr. Hicks testified that he gave the notice to Dr. Anthony Remson, medical director of Cypress Medical, who responded that "I know who needs to know about this." Thereafter, Dr. Hicks admitted that he took no further action in relation to the medical malpractice action. At the time, Dr. Hicks related that his medical malpractice insurance carrier was

---

1. Unbeknownst to James W. Hutcherson and Sharon A. Hutcherson, Dr. Glen Hicks was no longer employed at Cypress Medical Associates, P.S.C., in June 2003.

"Reliance" and that Reliance "had gone insolvent" sometime in 2001. In an attempt to obtain new malpractice coverage in 2002, Dr. Hicks further related that he asked the manager of his office to inquire about the status of the medical malpractice action and was told by the office manager that the action was "settled" and "in abeyance." Dr. Hicks stated that he took no further action as to the medical malpractice action until he received notice in August 2004 of a cross-claim filed against him by Cypress Medical at which time he contacted an attorney.

In January 2005, the circuit court denied Dr. Hicks' motion to set aside the default judgment. After reconsideration, on March 16, 2005, the circuit court entered an order to set aside the judgment as to damages and further held that Dr. Hicks would be permitted to participate in a damages hearing. The default judgment for liability was not set aside. Subsequently, the circuit court conducted another damages hearing in 2005 and then a jury trial in 2009 upon the sole issue of damages. The jury was instructed that Dr. Hicks was legally liable and was only instructed to determine the proper amount of damages. The jury returned a verdict of "0" as to damages. A final judgment reflecting the jury verdict and dismissing this action was entered February 16, 2009. This appeal follows.

The Hutchersons contend that the circuit court erred by setting aside the judgment awarding $211,953.39 in damages and by proceeding with a hearing on damages before the jury. Simply stated, the Hutchersons argue that the circuit court abused its discretion in setting aside the judgment assessing damages against Dr. Hicks. For the reasons hereinafter stated, we agree.

Generally, default judgments are disfavored in this Commonwealth, and the circuit court is vested with broad discretion to set aside such judgments. *Asset Acceptance, LLC v. Moberly,* 241 S.W.3d 329 (Ky.2007). To set aside a default judgment, a party must show good cause, which includes:

(1) [A] valid excuse for the default; (2) a meritorious defense to the claim; and (3) absence of prejudice to the non-defaulting party.

*PNC Bank, N.A. v. Citizens Bank of N. Ky., Inc.,* 139 S.W.3d 527, 531 (Ky.App.2003)(quoting *Sunrise Turquoise, Inc. v. Chemical Design Co.,* 899 S.W.2d 856, 859 (Ky.App.1995)).

In its opinion and order entered May 20, 2005, on a motion to alter, amend, or vacate the court's April 4, 2005, opinion and order,[2] the circuit court outlined its reasons for setting aside the judgment awarding damages:

This Court has based its decision on this issue on the authority contained in *Howard v. Fountain,* Ky.App., 749 S.W.2d 690 (1988). The Court therein stated that "fundamental fairness requires that a defaulting party be given notice of a damage assessment hearing where he has entered an appearance in the action prior to the hearing." [*Id.*] at 693. The conduct which constitutes an appearance has been liberally construed. In *Smith v. Gadd,* Ky., 280 S.W.2d 495 (1955), an appearance is defined as where, "the defendant has voluntarily taken a step in the main action that shows or from which it may be inferred that he has the intention of making some defense." [*Id.*] at 498.

First, Defendant Hicks asserts that he received no notice of that [damages]

---

**2.** The April 4, 2005, opinion and order affirmed the circuit court's order of March 16, 2005, which set aside the judgment awarding damages to the Hutchersons.

hearing. Second, upon receiving notice he attempted to have the default judgment and the damages award set aside, thus entering his appearance. While this Court has repeatedly declined to set aside the default judgment of liability, it has, in reliance upon the fundamental fairness language of *Howard* determined that a damages hearing is appropriate.

Essentially, in setting aside the judgment as to damages, the circuit court concomitantly relied upon the holding of *Howard v. Fountain*, 749 S.W.2d 690 (Ky.App. 1988), and the fact the Dr. Hicks "assert[ed] that he received no notice of the hearing" on damages. We believe the circuit court was mistaken in its application of *Howard* and thus erred in setting aside the judgment assessing damages against Dr. Hicks.

In *Howard*, a default judgment of liability was entered against a party; thereafter, the circuit court scheduled a hearing to assess damages without requiring notice to be sent to the defaulting party. *Id.* In the meantime, the defaulting party filed a late answer which was not accompanied by a motion for enlargement of time under CR 6.02. *Id.* Even though the defaulting party had filed a late answer, the circuit court conducted an ex parte damage hearing and awarded damages to the plaintiff. *Id.* The *Howard* Court held that a defaulting party should be given notice of the damage assessment hearing where such party had entered an appearance and should also be permitted to participate in such a hearing. *Id.; see also* CR 55.01. The Court in *Howard* viewed the defaulting party's filing of a late answer, which occurred before the damage assessment hearing, as an "appearance;" thus, the Court concluded that the defaulting party was entitled to notice of the damage assessment hearing. *Id.*

By contrast, it is uncontroverted that Dr. Hicks did not enter an "appearance" before the date of the damage hearing. Nevertheless, the record clearly reveals that the Hutchersons made a good faith attempt to serve Dr. Hicks with notice of the damage assessment hearing. On June 4, 2003, the Hutchersons served a hearing notice on Dr. Hicks by mailing a copy to Dr. Hicks' last known address, this being the same address where Dr. Hicks was served with the complaint by certified mail in 2000. A copy of the judgment was also mailed by the circuit clerk to Dr. Hicks at this address. After having served the summons and complaint on Dr. Hicks, it was not the duty of the Hutchersons or the circuit clerk to keep track of Dr. Hicks' whereabouts. As a party, he was duty bound to inform the clerk of his correct address. The fact that Dr. Hicks believed he had turned the matter over to his insurance company does not absolve him of the responsibility for staying abreast of the status of the litigation. The desirability of finality in judgments of any court requires this. *Com., Dept. of Highways v. Hatcher*, 386 S.W.2d 262 (Ky.1965).

In consideration of the factors necessary to establish good cause to set aside a default judgment, we believe that Dr. Hicks failed to demonstrate a valid excuse for his default or establish the absence of prejudice to the Hutchersons. *See PNC Bank*, 139 S.W.3d 527. It is undisputed and the record clearly reflects that Dr. Hicks received proper notice of the filing of the malpractice action on May 23, 2000. While he admits to receiving such notice, he did not respond to the action for over four years. Dr. Hicks' reasons for waiting four years are wholly inadequate and are simply incredulous. After admittedly receiving proper notice of the medical malpractice action, Dr. Hicks' only action in response was to inform the

director of Cypress Medical, Dr. Remson, of such notice. For over four years, he incredibly never contacted any attorney or attempted to follow up with his malpractice insurance carrier. Further, Dr. Hicks failed to contact the Jefferson Circuit Court, the Hutchersons' attorney, nor any other party to the action to ascertain the status of the case. This conduct is hard to conceive, especially since Cypress Medical was a named defendant in the medical malpractice action, who vigorously defended the action, and was also insured by the same malpractice insurance carrier (Reliance) as Dr. Hicks.[3]

In Dr. Hicks' affidavit filed in support of his motion to set aside the judgment, he asserts that he learned that the action was still active when he received a registered letter from Cypress Medical on August 4, 2004. Yet, his motion to set aside the judgment was not filed until November 10, 2004. This additional delay is inexplicable and otherwise is a reflection of the cavalier disregard of this lawsuit that Dr. Hicks exhibited throughout this proceeding. In this case, Dr. Hicks' actions, that culminated in the default, were unreasonable and grossly dilatory. As such, we cannot say that Dr. Hicks set forth a valid excuse for his default. *See Jacobs v. Bell*, 441 S.W.2d 448 (Ky.1969).

Additionally, the record clearly reflects that the Hutchersons have been greatly prejudiced by setting aside the default judgment awarding damages. The Hutchersons filed this malpractice action on May 18, 2000, for a claim that arose in 1999. However, because of Dr. Hicks' conduct

that resulted in the default and a significant delay in the case, a jury trial to assess damages did not occur for almost nine years thereafter, in February 2009. A delay of almost nine years certainly put the Hutchersons at a disadvantage in preserving and presenting evidence to support their case at the jury trial in 2009, again for a claim that actually arose in 1999. Additionally, a judgment in favor of the Hutchersons in the amount of $211,953.39 for damages proven at an evidentiary hearing in 2003 was set aside and ultimately reduced to "0." A second extensive damages hearing was conducted by the circuit court on October 31, 2005, but no ruling was subsequently made thereon. The circuit court concluded that a jury trial was necessary to apportion damages in accordance with KRS 411.182. Curiously, at the jury trial in 2009, no apportionment instruction was given to the jury. The necessity of a jury trial led in part to an additional three and one-half year delay in the case, for which this Court is most puzzled by since CR 55.01 plainly states that a party in default waives his right to a jury trial in any subsequent damage hearing.[4] The totality of these circumstances established that the Hutchersons were prejudiced in having to prove their claim in court not once, but three times. Unfortunately, on the third bite at the apple, Dr. Hicks prevailed in a jury trial which he was not entitled to.

■ In review of a lower court's decision to set aside a default judgment, an appellate court will not overturn a trial court's decision "absent a showing that the

---

**3.** This opinion does not address any claims that Dr. Hicks may have against Reliance or Cypress Medical, nor are those claims relevant to the disposition of the issues raised in this appeal.

**4.** The March 16, 2005, order setting aside the Hutchersons' judgment for damages stated

that the trial court would conduct the hearing on damages, which it apparently did on October 31, 2005, without entering a judgment. The court then ordered a new jury trial, notwithstanding that Dr. Hicks had waived his right to a jury trial on the damages claim.

trial court abused its discretion." *PNC Bank,* 139 S.W.3d at 530 (citing *Howard v. Fountain,* 749 S.W.2d 690, 692 (Ky.App. 1988)). In this case, we are of the opinion that the circuit court abused its discretion in setting aside the July 17, 2003, judgment assessing $211,953.39 in damages against Dr. Hicks. Dr. Hicks failed to establish good cause to warrant setting aside the judgment. The judgment in favor of the Hutchersons entered on July 17, 2003, shall be reinstated upon remand.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is reversed and this cause is remanded for proceedings consistent with this opinion.

ALL CONCUR.